1   BARRY J. PORTMAN
    Federal Public Defender
2   JEROME E. MATTHEWS
    Assistant Federal Public Defender
3   555 - 12th Street
    Suite 650
4   Oakland, CA 94607-3627
    Telephone: (510) 637-3500
5
    Counsel for Defendant ALONZO TURNER
6

7

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )    No. CR-07 00810 CW
                                       )
12              Plaintiff,             )    ALONZO TURNER'S RESPONSE TO
                                       )    APPEAL OF RELEASE ORDER
13  vs.                                )
                                       )
14  ALONZO TURNER,                     )
                                       )
15              Defendant.             )
    _____)
16

    **1. Preliminary Statement**
17
            Alonzo Turner pleaded guilty to a single count indictment on March 12, 2008, less than
18
    ninety days following his initial appearance.  He indicated from the outset his desire to accept
19
    responsibility for his conduct, and chose not to challenge the government's case.  Based on the
20
    parties' calculations, his sentencing exposure (assuming application of the low end of the
21
    applicable guideline range) is either 15 or 18 months.
22
            Mr. Turner's fiancee recently gave birth to their infant son.  Mr. Turner asks only for a
23
    brief, forty-eight hour period of release, so that he may spend time with his son and fiancee prior
24
    to serving his prison term.  Mr. Turner's father, George Turner, has agreed to act as his
25
    custodian.  As discussed more fully *post*, Mr. Turner made a sufficient evidentiary proffer to
26

    TURNER: Response to Appeal                1

1    Magistrate Judge Brazil to justify this limited, compassionate release.

2    **2. Mr. Turner's Proffer**

3    Mr. Turner asked that he be released on conditions sufficiently stringent to show by clear

4    and convincing evidence that he will not be a flight risk or danger to the community.  He

5    proffered the following:

6    That he be released to the custody and care of his father, George Turner;

7    That he reside at the home of George Turner, in Tracy, California;

8    That he not be permitted to travel, and that he remain at his father's house for the duration

9    of his release;

10    That Mr. Turner's fiancee and infant son travel to the home of George Turner in Tracy,

11    California, for purposes of visiting;

12    That all visits between Mr. Turner and his fiancee and their infant son take place in the

13    home of George Turner; and,

14    That George Turner return Mr. Turner to the Oakland office of the U.S. Marshals by noon

15    two days following his release.

16    In addition, Mr. Turner must meet with Pretrial Services and submit a negative drug test

17    before he is released from custody.  To secure his return to custody, Mr. Turner, his father

18    George, and Aberia Slater, a close friend of seven years, each have executed a surety bond in the

19    amount of $200,000.

20    **3. Argument**

21    **I.**

22    Mr. Turner has no quarrel with the government's general statement of the law, although

23    the "appeal" is actually a motion for reconsideration of a release order under 18 U.S.C. §3145(a).

24    Mr. Turner disagrees, however, with the government's conclusion that he presented no facts

25    sufficient to sustain his evidentiary burden.

26    At the outset, Mr. Turner is not seeking release until he is designated to a facility by the

TURNER: Response to Appeal                    2

1   Bureau of Prisons; to the contrary, he seeks release of limited scope and duration, with stringent

2   conditions specifically tailored to address any risk of flight or danger to the community.  His

3   release is limited to just over 48 hours, beginning at about 9:30 a.m. on a to-be-designated

4   weekday morning and concluding before noon two days later.  He will not be free to travel or

5   move about as he pleases; instead, he will be restricted to his father's residence for the duration

6   of his release.  All visiting with his fiancee and infant son must take place within his father's

7   residence, and his fiancee has agreed to travel to Tracy, California for those purposes.  At the

8   conclusion of his release period, Mr. Turner will, in the company of his father, surrender directly

9   to the U.S. Marshals' lockup in the Oakland federal courthouse.

10          The government takes issue with the suitability of Mr. Turner's father to act as a

11   custodian and surety, but its argument is not persuasive.  George Turner indeed suffered prior

12   felony convictions nearly twenty years ago, but he also has had no further contact with the

13   criminal justice system.  He has not idly spent the years since his release.  He has worked with

14   the Haight-Ashbury Free Clinic, Bayview-Hunters Point Foundation, and Community Awareness

15   Treatment Services in San Francisco.  He obtained his A.A. degree in Community Services and

16   Counseling from Merritt College, and presently is close to completing his requirements for a

17   Bachelor of Arts in Sociology at San Francisco State University.

18          Mindful of his own period behind bars, George Turner also has devoted himself to

19   creating a comprehensive – and by all accounts, well-received – services facility to assist those

20   being released from custody in their efforts to reintegrate with the community and build

21   productive lives.  His most recent effort is called "Phatt Chance Community Living," located at

22   430 Gaven Street in San Francisco.  During the course of establishing this facility, George Turner

23   built close relationships with local law enforcement, including the San Francisco Sheriff and

24   California Department of Corrections, and to this day is a frequent speaker at state-sponsored

25   events and workshops for new parolees.

26          Neither can there be any legitimate dispute concerning George Turner's financial ability

TURNER: Response to Appeal                    3

1    to shoulder a $200,000 bond.  In addition to the Tracy property to which the government adverts,

2    Mr. Turner owns two income properties – both of which are single family residences located in

3    Oakland – that are valued at $450,000 and $475,000 respectively and in which he has equity

4    interests totaling approximately $150,000.  With over $200,000 equity in real estate holdings,

5    George Turner's assets not only are more than sufficient to provide adequate security but also

6    ameliorate any concern that Mr. Turner's other proffered surety has not been vetted by Pretrial

7    Services.

8                                                      **II.**

9           Mr. Turner gainsays neither the government's description of the offense conduct nor his

10   criminal history.[1]  Neither, however, demonstrates that the proposed release conditions are

11   insufficient under the Bail Reform Act.  By the parties' calculations, he has no prior convictions

12   that would increase his offense level above 14, and his criminal history points apparently total 3,

13   placing him in Criminal History Category II.  As far as felon in possession cases go, Mr. Turner's

14   exposure is on the low end of the scale.

15          More importantly, there is a compelling disincentive for Mr. Turner to violate the

16   proposed conditions of his release that the government fails to address: the parties' plea

17   agreement.  Should Mr. Turner flee, engage in any criminal conduct or otherwise fail to abide by

18   Magistrate Judge Brazil's release order, he will be subject to losing an offense level reduction for

19   acceptance of responsibility and possibly the government's promise to recommend the low end

20   of the guidelines.

21          In sum, Mr. Turner has sustained his burden.  His criminal history is not egregious and he

22   is not facing a lengthy prison term.  Between the plea agreement and the financial risk assumed

23   by his father and friend, there simply is too much at stake for Mr. Turner not to conform to the

24   _____

25          [1] It is defense counsel's recollection that at least five of Mr. Turner's failures to appear
     were for traffic infractions.  The present case began in state court; Mr. Turner was released on
26   bail, made his court appearance, and was later arrested on a federal warrant that had presumably
     issued following return of the indictment.

TURNER: Response to Appeal                          4

1    terms of Magistrate Brazil's release order.  Further, there are stringent controls, the period of

2    release is extremely brief, and there is sufficient financial security to support the bond.  This

3    Court should require no more than that.

4    **3.  Conclusion**

5        For the reasons stated, Alonzo Turner respectfully requests that the Court deny the

6    government's motion to revoke Magistrate Judge Brazil's release order.

7

8    Dated: March 21, 2008

9                                                            Respectfully submitted,

10                                                           BARRY J. PORTMAN
                                                             Federal Public Defender
11
                                                                    /S/
12
                                                             JEROME E. MATTHEWS
13                                                           Assistant Federal Public Defender

14

15

16

17

18

19

20

21

22

23

24

25

26